

Richard S. Busch (SB 5613)
KING & BALLOW
315 Union Street, Suite 1100
Nashville, Tennessee 37201
Telephone: (615) 259-3456
Facsimile: (615) 726-541

Kenneth E. Gordon (KG 5703)
GORDON, GORDON & SCHNAPP, P.C.
437 Madison Avenue, 39th Floor
New York, New York 10022
Telephone: (212) 355-3200
Facsimile: (212) 355-3292

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| REO SPEEDWAGON, INC., | ) | |
|---|---|---|
| | ) | Case No._____ |
| Plaintiff, | ) | |
| v. | ) | COMPLAINT FOR BREACH OF CONTRACT; ACCOUNTING; AND DECLARATORY JUDGMENT |
| | ) | |
| | ) | |
| SONY MUSIC ENTERTAINMENT, | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| Defendant. | ) | |

Plaintiff REO Speedwagon, Inc. ("Plaintiff"), by and through its attorneys, for its

Complaint against the Defendant named above alleges as follows:

### PARTIES

1.  Plaintiff is a California corporation with its principal place of business in Agoura

Hills, California.

1

2. Defendant Sony Music Entertainment ("Sony") is a Delaware General Partnership, whose partners are citizens of Delaware and New York. Sony's principal place of business is located at 550 Madison Avenue, New York, New York 10022.

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is based upon 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs. This action for declaratory judgment is brought pursuant to 28 U.S.C. § 2201 which is within the exclusive jurisdiction of federal courts pursuant to 28 U.S.C. § 1331.

4. Personal jurisdiction over Sony is proper in this Court on the grounds that (a) Sony transacts business in the State of New York; (b) Sony's wrongful conduct, alleged herein, occurred in the State of New York and in this District; and, (c) the Recording Agreement, as defined below, was entered into in this District and the parties agreed the validity, interpretation and legal effect of the Recording Agreement would be governed by the laws of the State of New York.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2).

## FACTUAL ALLEGATIONS

6. On or about July 9, 1981, Plaintiff entered into a recording agreement (the "Recording Agreement") with Sony's predecessor in interest CBS Records. (Sony and its predecessor are collectively referred to as "Sony" hereinafter).

7. Pursuant to and during the terms of the Recording Agreement, Plaintiff caused certain "master" recordings of musical performances of the band p/k/a "REO Speedwagon" (the

"REO Masters") to be made and delivered to Sony, which REO Masters Sony had agreed to manufacture, distribute, sell, and license for sale and distribution in various configurations.

8. Over the course of its career, REO Speedwagon has experienced significant commercial success, selling more than 40 million records and having thirteen Top 40 hits, including the number ones, "Keep On Loving You" and "Can't Fight This Feeling."

9. In consideration of Plaintiff's performance under the Recording Agreement, Sony agreed to pay Plaintiff under a certain enumerated royalty structure and to account to Plaintiff under that royalty structure.

10. During the period beginning on January 1, 2009 and continuing through the present, Sony has failed to properly account to and pay Plaintiff under the royalty structure set forth in the Recording Agreement.

11. The Recording Agreement states in pertinent part, "In respect of any Master Recording leased by [Sony] to others for their distribution of Phonograph Records in the United States, [Sony] will pay [Plaintiff] 50% of [Sony's] net receipts."

12. Under the terms of the Recording Agreement, music downloads, mastertones, and ringtones are "Phonograph Records."

13. Sony has consistently failed to properly account to and pay Plaintiff for REO Masters leased to third-party Music Download and Mastertone Providers, such as iTunes (Apple), eMusic, amazon.com, Verizon Wireless and others. Music Download and Mastertone Providers are third-parties that licensed (or "leased" in Sony's parlance) the REO Masters from Sony and then distributed music downloads, mastertones, and ringtones to end users on computers, cell phones, or other devices.

14. After January 1, 2009, Sony leased the REO Masters to third-party Music Download and Mastertone Providers, so that those third-party Music Download and Mastertone Providers could distribute music downloads, mastertones, and ringtones to the public. Sony received monies for this leasing and continuously and persistently failed to account to and pay Plaintiff the 50% of net receipts due to Plaintiff pursuant to the terms of the Recording Agreement.

15. Instead, between January 1, 2009 and present, Sony systematically accounted to and paid Plaintiff for the REO Masters leased to third parties, including third party Music Download and Mastertone Providers at lower royalty rates, under provisions of the Recording Agreement, which are applicable only to Phonograph Records sold by Sony, and are not applicable to the leasing of the REO Masters.

16. The Ninth Circuit in *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958 (9th Cir. 2010), held that income from Music Download and Mastertone Providers was licensing (or leasing in Sony's parlance) income. This decision means Plaintiff is entitled to be paid on Sony's income from Music Download and Mastertone Providers under the Masters leased provision of the Recording Agreement.

17. Sony may claim, as it has in other cases when suit has been filed against it, that "leasing" masters under the recording agreement means something different than "licensing" masters, so Sony does not owe plaintiff a share of 50% of net receipts even if it licensed the masters to third parties for sale as downloads and master tones. This assertion would be nonsense, and would be contrary to Sony's historical practice. Sony has paid plaintiff, and others who have similar language in their recording agreements, 50% of net receipts on licensed income regardless of whether the applicable recording agreement says that the artist gets 50% of

4

receipts when Sony "leases" masters or "licenses" masters. In other words, Sony's historical practice shows that it considers the leasing and licensing of master recordings to mean the same thing.

18. Sony's failure to account to and pay artists correctly for its income from Music Download and Mastertone Providers resulted in a class action, *Shropshire v. Sony Music Entertainment*, Case Number 06 Civ. 4252, being filed in the Southern District of New York. On March 7, 2012, the parties to that litigation moved for preliminary approval of a proposed settlement of that action.

19. Because the relief offered by the class action suit is wholly insufficient to make Plaintiff whole, on July 3, 2012, Plaintiff opted out of the class in order to bring its own separate claims.

20. Sony's failure to correctly pay Plaintiff for music downloads, mastertones, and ringtones derived from REO Masters leased to Music Download and Mastertone Providers has resulted in Sony underpaying Plaintiff in an amount which can only be determined after Sony has provided an accurate accounting, but believed to be in excess of $150,000.

21. In addition, Plaintiff has a reasonable belief that Sony has, through acts known and unknown, failed to accurately account to and pay Plaintiff for Sony's own exploitation of the REO Masters.

22. Sony's failure to correctly account to and pay royalties to Plaintiff including its failure to correctly account to and pay royalties for Sony's leasing of the REO Masters to third-party Music Download and Mastertone Providers has resulted in Plaintiff being significantly underpaid under the terms of the Recording Agreement. Sony's underpayment of royalties to Plaintiff is the direct and proximate cause of financial harm to Plaintiff.

23.    Sony was notified on or about July 18, 2012, of Plaintiff's objection to every royalty statement issued by Sony for the royalty periods beginning January 1, 2009 and continuing through the present, and notified Sony of its failure to correctly pay Plaintiff for music downloads, mastertones, and ringtones derived from REO Masters leased to Music Download and Mastertone Providers. To date, Sony has failed to remedy this failure and to make Plaintiff whole.

24.    Upon information and belief, Sony has continued to incorrectly account to and pay Plaintiff in the period after the specific written notice was sent to Sony. Such continuing failure to account to and pay Plaintiff has resulted in additional substantial financial damage to Plaintiff.

## CLAIM I
## Breach of Contract

25.    Plaintiff re-alleges each and every allegation in paragraphs 1 through 24 as if fully set forth herein.

26.    The Recording Agreement is a valid and enforceable contract between Plaintiff and Sony.

27.    Plaintiff has performed all its obligations under the Recording Agreement.

28.    Sony has failed to comply with the terms of the Recording Agreement and failed to fulfill its obligations under the Recording Agreement by failing to properly account to and pay Plaintiff royalties for Sony's leasing of the REO Masters to third parties including Music Download and Mastertone Providers.

29.    By reason of the foregoing and other acts not presently known by Plaintiff, Sony has knowingly and materially breached its contractual obligations to Plaintiff under the Recording Agreement.

30.     Sony's material breach of the Recording Agreement is the legal cause of substantial damage to Plaintiff for which Plaintiff seeks monetary damages in an amount to be determined at the time of trial, which, upon information and belief, is in excess of $150,000.

## CLAIM II
### Declaratory Judgment

31.     Plaintiff re-alleges each and every allegation in paragraphs 1 through 30 hereof as if fully set forth herein.

32.     Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is, or could be, sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

33.     Plaintiff seeks a declaration that, pursuant to the Recording Agreement, Sony is obligated to pay Plaintiff fifty percent (50%) of Sony's net receipts derived from the leasing of the REO Masters to others for the manufacture and sale of Phonograph Records or for any other uses, including but not limited to the leasing of the REO Masters to Music Download and Mastertone Providers.

34.     Sony denies the leasing of the REO Masters to Music Download and Mastertone Providers requires it to pay Plaintiff fifty percent (50%) of Sony's net receipts.

35.     Sony continues to lease the REO Masters to Music Download and Mastertone Providers and receive payment from Music Download and Mastertone Providers, but, on information and belief, continues to account to Plaintiff for these leases at a royalty rate that is less than fifty percent (50%) of Sony's net receipts from those leases.

36.     By reason of the foregoing, there is a present controversy between Plaintiff and Sony for which a declaratory judgment should be entered.

37.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Sony as follows:

1.      Compensatory damages, the exact amount of which to be determined at the time of trial, but in an amount not less than $150,000;

2.      An Order and Judgment declaring that the Recording Agreement requires Sony to account to and pay Plaintiff fifty (50%) of its net receipts for leasing of the REO Masters, including leasing to Music Download and Mastertone Providers;

3.      An award of actual and reasonable attorneys' fees and costs for services rendered to Plaintiff in this action;

4.      An award of pre- and post-judgment interest;

5.      A trial by jury on all triable issues; and

6.      Such other and further relief as the Court deems just and proper.

Dated: September 19, 2012          By:     /s/ Richard S. Busch

                                           Richard S. Busch (SB 5613)
                                           KING & BALLOW
                                           315 Union Street, Suite 1100
                                           Nashville, Tennessee 37201
                                           Telephone: (615) 259-3456
                                           Facsimile: (615) 726-541

                                   By:     _____
                                           Kenneth E. Gordon (KG 5703)
                                           GORDON, GORDON & SCHNAPP, P.C.
                                           437 Madison Avenue, 39th Floor
                                           New York, New York 10022
                                           Telephone: (212) 355-3200
                                           Facsimile: (212) 355-3292